**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
                      Plaintiff,                      :     Civil Action No. 1:21-cv-5606
                                                      :
v.                                                    :     **COMPLAINT FOR VIOLATIONS OF**
                                                      :     **SECTIONS 14(a) AND 20(a) OF THE**
CORE-MARK HOLDING COMPANY, INC.,                      :     **SECURITIES EXCHANGE ACT OF**
STUART W. BOOTH, GARY F. COLTER,                      :     **1934**
HARVEY L. TEPNER, RANDOLPH I.                         :
THORNTON, LAURA FLANAGAN, SCOTT                       :     **JURY TRIAL DEMANDED**
E. MCPHERSON, ROCKY DEWBRE,                           :
ROBERT G. GROSS, and DIANE                            :
RANDOLPH,                                             :
                                                      :
                      Defendants.                     :
---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Core-Mark Holding Company, Inc.,

("Core-Mark or the "Company") and the members Core-Mark's board of directors (the "Board"

or the "Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Core-Mark and Performance Food

Group Company and its affiliates ("Performance").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on June 25, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Longhorn Merger Sub I, Inc. ("Merger Sub I"), a wholly owned subsidiary of Performance, will merge with and into Core-Mark with Core-Mark surviving the transaction. Then immediately after, Core-Mark will merge with and into Longhorn Merger Sub II, LLC ("Merger Sub II"), a wholly-owned subsidiary of Performance, with Merger Sub II being the surviving company (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Core-Mark stockholder will receive (i) 0.44 shares of Performance common stock; and (ii) $23.875 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Core-Mark's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Barclays Capital Inc. ("Barclays") in support of is fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Core-Mark's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's financial advisor is headquartered in this District, and the Company's proxy solicitor is also headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Core-Mark stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Stuart W. Booth has served as a member of the Board since August 2005.

11.     Individual Defendant Gary F. Colter has served as a member of the Board since August 2004.

12.     Individual Defendant Harvey L. Tepner has served as a member of the Board since August 2004.

13.     Individual Defendant Randolph I. Thornton has served as a member of the Board and Chairman of the Board since August 2004.

14.     Individual Defendant Laura Flanagan has served as a member of the Board since June 2016.

15.     Individual Defendant Scott E. McPherson has served as a member of the Board, President and Chief Executive Officer since June 2018.

16.     Individual Defendant Rocky Dewbre has served as a member of the Board since January 2019.

17.     Individual Defendant Robert G. Gross has served as a member of the Board since October 2011.

18.     Individual Defendant Diane Randolph has served as a member of the Board since January 2020.

19.     Defendant Core-Mark a Delaware corporation and maintains its principal offices at 1500 Solana Boulevard, Suite 3400, Westlake, Texas 76262.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "CORE."

20.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

22.     Core-Mark distributes packaged consumer products to the convenience retail industry. The Company sells and distributes food products, including candies, snacks, groceries, and beverages; fresh products, such as sandwiches, juices, salads, produce, dairy, and bread; and

non-food products comprising cigars, tobacco, alternative nicotine products, health and beauty care products, and general merchandise and equipment. Its customers include traditional convenience stores, such as national and super-regional convenience store operators, as well as independently owned convenience stores. In addition, the Company's alternative outlet customers include various store formats, which comprise grocery stores, drug stores, mass merchants, liquor stores, cigarette and tobacco shops, hotel gift shops, military exchanges, college and corporate campuses, casinos, airport concessions, and other specialty and small format stores that carry convenience products. It provides its products to 40,000 customer locations through a network of 32 distribution centers in the United States and Canada. The Company was founded in 1888 and is headquartered in Westlake, Texas.

23.     On May 18, 2021, the Company and Performance jointly announced the Proposed Transaction:

> RICHMOND, Va. & WESTLAKE, Texas--(BUSINESS WIRE)--Performance Food Group Company (PFG) (NYSE: PFGC) and Core-Mark Holding Company, Inc. (Core-Mark) (NASDAQ: CORE) today announced that they have entered into a definitive agreement pursuant to which PFG will acquire Core-Mark in a stock and cash transaction.
>
> Under the terms of the transaction, which has been unanimously approved by the Board of Directors of each company, Core-Mark shareholders will receive $23.875 per share in cash and 0.44 PFG shares for each Core-Mark share. The transaction values Core-Mark at approximately $2.5 billion, including Core-Mark's net debt. Upon closing of the transaction, Core-Mark shareholders will own approximately 13% of the combined company. Core-Mark expects to continue paying its current quarterly dividend through the completion of the transaction.
>
> The transaction will create a best-in-class convenience business within PFG's Vistar segment that will include the Core-Mark and Eby-Brown businesses. The expanded convenience business will operate under the Core-Mark brand and will be headquartered in

Westlake, Texas with Eby-Brown maintaining ongoing operations in Naperville, Illinois. Scott McPherson will continue in his role as President and Chief Executive Officer of Core-Mark, following closing of the transaction. Tom Wake will continue as President and Chief Executive Officer of Eby-Brown, reporting to Mr. McPherson.

"We are excited to announce the strategic acquisition of Core-Mark and welcome the organization to Performance Food Group," said George Holm, PFG Chairman, President & Chief Executive Officer. "Core-Mark is an outstanding company that we believe will significantly strengthen our business diversification and expansion into the convenience store channel. Core-Mark brings a highly skilled and experienced workforce along with an experienced senior leadership team, which will be valuable additions to the PFG family of companies. This transaction will also combine Core-Mark's footprint and operational excellence with PFG's existing capabilities in both convenience and foodservice. The deal comes with strong strategic and financial merits which we believe will generate significant customer benefits and help PFG continue to create long term shareholder value. The two organizations have similar cultures, which we expect will facilitate a smooth integration and transition process. We look forward to getting to know the associates at Core-Mark better and building a strong future as one organization."

"On behalf of PFG's Vistar segment, I echo George's enthusiasm for this transaction," said Patrick Hagerty, Executive Vice President of PFG and Chief Executive Officer of Vistar. "Adding convenience store distribution in 2019 built up the core strength of our organization, providing another important avenue for growth. Bringing Core-Mark to PFG will continue this journey and complement our existing portfolio. I look forward to us bringing together the best talent in convenience and welcoming Core-Mark associates at close."

Core-Mark is one of the largest wholesale distributors to the convenience retail industry in North America with approximately $17 billion in net sales. The company has approximately 7,500 employees and operates 32 distribution centers across the United States and Canada. Core-Mark services approximately 40,000 customer locations in all 50 states in the U.S., five Canadian provinces and two Canadian territories.

"This transaction brings together two companies known for their customer-focused approach and dedication to their employees," said

Scott McPherson, Core-Mark President and Chief Executive Officer. "As part of our continuous focus to maximize shareholder value and better serve our customers, our Board evaluated the transaction and determined this combination provides our investors immediate value and the opportunity to participate in the upside potential of being part of a larger, diversified and customer-centric supplier in the foodservice and convenience retail industry. The combination of our two highly complementary businesses creates an even stronger platform to drive growth, as we deliver a best-in-class offering to our customers. I'd like to thank the entire Core-Mark team for their hard work and focus in helping us reach this exciting milestone."

Upon closing of the transaction, at least one current Core-Mark director will be added to the PFG Board of Directors.

### Compelling Strategic and Financial Benefits

- **Accelerates PFG's diversification and adds highly complementary assets in the convenience store channel:** With the closing of this transaction, PFG will add approximately $17 billion of net sales, resulting in total PFG pro-forma LTM net sales of approximately $44 billion.

- **Adds complementary customer-centric operating model:** Core-Mark brings a consistent go-to-market approach with a selling culture focused on customer success.

- **Enhances attractive customer base and product offerings:** The transaction builds upon PFG's current foodservice focus within the convenience channel adding additional customers and product offerings, particularly in the fresh food space.

- **Strong strategic and financial merits:** The transaction is expected to be accretive to Adjusted Diluted EPS in the first full fiscal year following the close. The accretion calculation does not include any of the expected cost synergies.

- **Annual run-rate net cost synergies of approximately $40 million expected to be achieved by the third full year after closing.**

### Transaction Financing

The transaction is not conditioned on financing. PFG expects to fund the cash portion of the transaction consideration with borrowing

from its asset-based revolving credit facility and the issuance of new senior unsecured notes.

**Timing and Approvals**

The transaction is expected to close in the first half of calendar 2022, subject to U.S. federal antitrust clearance, Core-Mark shareholder approval, and other customary closing conditions. The transaction is not subject to PFG shareholder approval.

**Advisors**

BMO Capital Markets Corp. acted as the exclusive financial advisor to PFG, and J.P. Morgan Securities LLC provided a fairness opinion to the Board of Directors of PFG. Skadden, Arps, Slate, Meagher & Flom LLP acted as legal counsel to PFG. Barclays acted as the exclusive financial advisor to Core-Mark. Weil, Gotshal & Manges LLP acted as legal counsel to Core-Mark.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Core-Mark's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Registration Statement**

25.     On June 25, 2021, Core-Mark and Performance jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to

vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Barclays in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Performance Projections") and provided them to the Board and Barclays with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections and the Performance Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA; Adjusted EBIT; Adjusted EBIT (including Stock-Based Compensation Expense); Net Operating Profit After Tax; and Unlevered Free Cash Flows as calculated by each of the Company's and Performance's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP

metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.    The Registration Statement also fails to disclose the material assumptions underlying the PFG Projections made by Core-Mark management, including, without limitation, the following: (i) rates of organic revenue growth across PFG's segments; (ii) 2% inflation growth within PFG's foodservice segment; (iii) that depreciation would remain stable as a percentage of revenue; (iv) growth rates in sales, general and administrative expenses and capital expenditures; (v) a stable corporate tax rate of 26%; (vi) that depreciation and amortization would equal capital expenditures in the terminal year; and (vii) certain assumptions made by Core-Mark that the combined company would capitalize on economies of scale in general and administrative and operating costs, logistics and supply chain costs and procurement costs.

29.    When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its

usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to Barclays' *Selected Comparable Company Analysis – Core-Mark*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Barclays in the analysis.

33.     With respect to Barclays' *Selected Comparable Company Analysis – PFG*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for the companies observed by Barclays in the analysis; and (ii) Performance's 2011 and 2022 estimated non-GAAP earnings per share.

34.     With respect to Barclays' *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for the transactions observed by Barclays in the analysis; (ii) the closing date of each transaction; and (iii) the purchase prices and financial multiples paid in each transaction.

35.     With respect to Barclays' *Discounted Cash Flow Analysis – Core-Mark*, the Registration Statement fails to disclose: (i) the terminal values of Core-Mark; (ii) line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions

underlying the use of the implied perpetuity growth rate of 1.75% to 2.25%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; (v) the number of fully diluted outstanding of Core-Mark common stock as of May 14, 2021; and (vi) the Company's weighted average cost of capital.

36.     With respect to Barclays' *Discounted Cash Flow Analysis – PFG*, the Registration Statement fails to disclose: (i) the terminal values of Performance; (ii) line items used to calculate Performance's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 2.25% to 2.75%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; (v) the number of fully diluted outstanding of Performance common stock as of May 14, 2021; and (vi) Performance's weighted average cost of capital.

37.     With respect to Barclays' *Research Analysts Price Targets Analysis for Core-Mark and PFG*, the Registration Statement fails to disclose: (i) the price targets for Core-Mark and Performance; (ii) the brokers observed for the analysis; (iii) the inputs and assumptions underlying the use of the cost of equity of 9.5%.

38.     With respect to Barclays' *Premiums Paid Analysis*, the Registration Statement fails to disclose: (i) the premiums paid in the completed mergers and acquisitions transactions observed; (ii) the qualitative judgments made by Barclays in the analysis.

39.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Core-Mark within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Core-Mark, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Core-Mark, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Core-Mark, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

50.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 28, 2021                    **MELWANI & CHAN LLP**

                              By:   */s/ Gloria Kui Melwani*
                                    _____
                                    Gloria Kui Melwani
                                    1180 Avenue of the Americas, 8th Fl.
                                    New York, NY 10036
                                    Telephone: (212) 382-4620
                                    Email: gloria@melwanichan.com

                                    *Attorneys for Plaintiff*